UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

ELISEO CUAHUA, RODRIGO CUAHUA, RAUL CUAHUA, ORLANDO TLAXCALTECATL FLORES, and VIDAL RIOS, individually and on behalf of others similarly situated,

Plaintiffs,

-against-

TANAKA JAPANESE SUSHI INC. (d/b/a TANAKA), SAMURAI SASHIMI INC. (d/b/a TANAKA), and JIN JIANG,

Defendants.

---------------------------------------------------------------------x

14-cv-4177 (ER)(FM)

**CLOSING STATEMENT**

Defendants Tanaka Japanese Sushi, Inc. (d/b/a Tanaka), Samurai Sashimi Inc. (d/b/a Tanaka), and Jin Jiang (hereinafter collectively referred to as "defendants"), hereby submit the following as their Closing Statement in connection with the Trial held before the Honorable Edgardo Ramos on October 26, 2015.

In light of the applicable statutory provisions and existing case law, the absence of documentation pertaining to wages prevents defendants from arguing to this Court that there is no liability on their part. Accordingly, this closing statement will address issues pertaining to tip and meal credits, discrepancies in the evidence concerning weekly pay and hours worked, the amount of damages sought for unpaid wages and the statute of limitations defense as it concerns plaintiff Rodrigo Cuahua. Most significantly, this closing statement will discuss why plaintiffs are not entitled to liquidated damages in this case.

## TIP CREDITS

In actions pertaining to the FLSA as well as the New York Labor Law, an employer is permitted to take a credit toward the minimum wage paid to an employee for tips received up to the amount of $1.60 per hour on and after January 1, 2011, $2.35 per hour on and after December 31, 2013 and $3.10 per hour on and after December 31, 2014. 29 U.S.C. §203(m); 12 NYCRR §146-1.3(a)(1).

The defendants have produced written documentation reflecting that plaintiff Vidal Rios ("Vidal") was advised in writing that tips would be used as a credit toward the minimum wage requirements imposed by law. The Notice and Acknowledgment of Pay Rate and Payday for plaintiff Vidal (hereinafter the "Notice of Pay") (admitted into evidence as Defendant Trial Exhibit "A") and Employee Salary Receipt (Defendant Trial Exhibit "B") demonstrate compliance with existing law so as to permit defendants to take credit for tips earned by plaintiff Vidal in the amounts set forth in the preceding paragraph.

## MEAL CREDIT

In actions pertaining to the FLSA, an employer is permitted to take a credit toward the minimum wage paid to an employee for meals provided to the employee free of charge. 29 U.S.C. §203(m). See also Yan v. 520 Asian Rest. Corp., 2014 U.S. Dist. LEXIS 174259, * 25 (S.D.N.Y. 2014).

In cases brought under the New York Labor Law alleging failure to comply with minimum wage and/or overtime requirements, an employer is permitted to take a credit toward the minimum wage paid to an employee for meals provided to the employee free of charge in an amount of $2.50 per meal on and after January 1, 2011, $2.75 per meal on and after December 31, 2013 and $3.00 per meal on and after December 31, 2014. 12 NYCRR §146-1.9.

Meals are customarily provided by employers to employees who are delivery men at Japanese restaurants. Trial Affidavit of Jin Jiang (hereinafter "Jiang Aff."), Defendant Trial Exh. "F", at ¶ 16.[1] Tanaka provided persons employed as delivery persons with meals free of charge. Id. at ¶ 17. Plaintiffs herein were provided with two meals per day for each day worked, which totals 12 meals per week for each plaintiff. Id.

This was specifically acknowledged by plaintiff Eliseo Cuahua (hereinafter "Eliseo") in his trial and deposition testimony[2] and by plaintiff Rodrigo Cuahua (hereinafter "Rodrigo") in his trial testimony. Deposition Excerpts of Eliseo Cuahua (hereinafter "Eliseo Depo."), Defendant Trial Exh. "C", at p. 27.[3]

Defendants are therefore entitled to a meal credit toward the wage requirements for each plaintiff for 12 meals in the amounts set forth in the New York Labor Law. 12 NYCRR §146-1.9.

## NUMBER OF HOURS WORKED/WEEKLY SALARIES PAID

It is respectfully submitted that plaintiffs are exaggerating the hours they claim to have worked in an effort to maximize any judgment that may be granted to them. Defendant Jiang, while admittedly lacking required documentation, testified with regard to his familiarity with his

[1] Although plaintiff Raul Cuahua and defendant Jin Jiang did not appear for cross-examination at trial, counsel for both parties stipulated that their trial affidavits would be admitted into evidence.

[2] The reference to "testimony", unless otherwise indicated, is a reference to testimony provided in court as well as testimony submitted by Affidavit and admitted as an Exhibit during the trial. All references to testimony provided in court during trial which is not contained within a trial exhibit are made upon recollection and/or notes of counsel. Although it obviously would provide more accuracy, due to economic concerns, defendants have decided not to order the transcript of the trial.

[3] To avoid confusion, page references to deposition excerpts pertain to the actual deposition page itself as opposed to the page of the exhibit. For example, "Defendant Trial Exh. "C", at p. 30" refers to page 30 of the deposition transcript itself, although it is only the seventh page of the Exhibit "C".

business and the hours worked by his delivery persons. Jiang Aff., Defendant Trial Exh. "F", at ¶ 26. He testified that his delivery persons worked 57 to 60 hours per week. Id. at ¶ 27.

Defendant Jiang further testified that none of these plaintiffs worked the excessive number of hours claimed to have been worked and that, indeed, none of them could have worked those hours. Id. at ¶ 27-28. Defendant Jiang explained that the restaurant was closed Mondays through Friday between 3:30pm and 5:00pm and that, during that time, none of the delivery persons worked. Id. at ¶ 27.

Despite his failure to maintain employment records as required by law, defendant Jiang's testimony, it is submitted, is more credible than that of the plaintiffs, and several aspects of his testimony are confirmed by the testimony of some of the plaintiffs as well as by the limited documentation that exists pertaining to their employment.

Defendant Jiang's testimony with regard to the amount of tips earned is confirmed by the Notice of Pay and Employee Salary Receipt for plaintiff Vidal (see Defendant Trial Exhibits "A" and "B") as well as the testimony of plaintiffs Rodrigo and Orlando Flores (hereinafter "Orlando"). Furthermore, his testimony concerning the $300 weekly salary is confirmed by the testimony of plaintiffs Rios and Orlando.

Jiang Aff., Defendant Trial Exh. "F", at ¶ 29. It should also be noted that, despite the fact that the plaintiffs possess no evidence of what they received from defendants and the fact that it subjected him to liability under the minimum wage laws, defendant Jiang acknowledged that he paid plaintiffs only $300 per week.

**TIME SPENT ON NON-DELIVERY TASKS**

On the question of whether plaintiffs spent most of their time doing deliveries, I would submit that it is only relevant on the issue of whether defendants may take advantage of the tip

credit and, as a result of the absence of documentation of written notice to all plaintiffs except Vidal Rios (for which there was written notice), the relevance in this case may be minimal. Nonetheless, it is discussed herein to address plaintiffs' baseless contention that the plaintiffs were "non-tipped" employees and that defendants engaged in a practice of deceptively "disguising" plaintiffs as delivery workers.

Defendant Jiang testified that plaintiffs (with the exception of plaintiff Raul Cuahua) worked for Tanaka as delivery persons and that any non-delivery tasks were occasional. Jiang Aff., Defendant Trial Exh. "F", at ¶ 23. This is supported by the testimony of plaintiffs concerning the number of deliveries they made during the course of a day.

Plaintiff Eliseo testified at trial and deposition that he spent most of his time doing deliveries and spent more than nine hours per day on five of the six days he worked doing deliveries. Eliseo Depo., Defendant Trial Exh. "C", at p. 23.

Plaintiff Orlando testified that he spent approximately 30 – 40 minutes on each delivery (round trip) and, as discussed above, stated that he made about 25 deliveries per day. This reflects that plaintiff Orlando spent at least 12.5 hours per day on deliveries. While these are estimates and not exact figures, it is clear that plaintiff Orlando could not have spent any significant amount of time performing non-delivery tasks, as claimed.

**WAGE NOTICE AND WAGE STATEMENTS UNDER NYLL §195**

Prior to February 27, 2015, employees are permitted to recover up to $50 per week for violations of the Wage Notice provisions of section 195(1) of the New York State Labor Law, but such damages shall not exceed $2,500 per plaintiff. Baltierra v. Advantage Pest Control Co., 2015 U.S. Dist. LEXIS 124961, *29 (S.D.N.Y. 2015).

While there is, candidly, no evidence in the record reflecting compliance with section 195(1) for plaintiffs Eliseo, Rodrigo, Raul and Orlando, the evidence in the record reflects compliance with this provision as it concerns plaintiff Vidal Rios.

Section 195(1) requires that wage notices be provided "on or before February first of each subsequent year of the employee's employment with the employer". The first February on which plaintiff Vidal was employed was February 1, 2015 and he was previously provided with the required Wage Notice in July of 2014.

Employees, prior to February of 2015, were also permitted to recover up to $100 per week for failure to provide the Wage Statements mandated by section 195(3) but the damages are limited to $2,500 for each plaintiff. Baltierra v. Advantage Pest Control Co., 2015 U.S. Dist. LEXIS 124961, *28 (S.D.N.Y. 2015).

As such, should this Court award damages for violations of section 195(3), those damages, it is submitted, may not exceed $2,500 per plaintiff.

**AMOUNTS ACTUALLY RECEIVED BY PLAINTIFFS FROM TANAKA**

The amounts actually received by plaintiffs – inclusive of wages and tips – lend further support to the absence of any bad faith on the part of defendants.

**Eliseo Cuahua**

Plaintiff Eliseo Cuahua (hereinafter "Eliseo") testified that the period of his employment was March of 2012 through May 23, 2014. Trial Declaration of Eliseo Cuahua, Plaintiff Trial Exh. "A", at ¶ 7.

As for his weekly salary, while plaintiff Eliseo testified to receiving $250 per week, defendant Jin Jiang stated in his Trial Affidavit that plaintiff Eliseo was paid $300 per week.

Jiang Aff., Defendant Trial Exh. "F", at ¶ 29. This was supported by plaintiff Orlando Flores, who testified that plaintiff Eliseo earned $300 per week at Tanaka.

Plaintiff Eliseo testified that he received approximately $250 - and sometimes more - in tips in a given week and kept all of his tips.[4] This was testified to by plaintiff Eliseo at trial and in his deposition. Deposition Excerpts of Eliseo Cuahua (hereinafter "Eliseo Depo."), Defendant Trial Exh. "C", at p. 29-30.

According to plaintiff Eliseo's testimony, he therefore received, in total, a minimum of $500 per week. From a common-sense perspective of someone not acquainted with legal mandates, this amounts to $8.77 per hour if plaintiff Eliseo worked 57 hours per week and would amount to $7.19 per hour if he worked 69.5 hours of work, as claimed.[5]

**Rodrigo Cuahua**

Plaintiff Rodrigo testified that the period of his employment was August of 2010 through April 15, 2011. Trial Declaration of Rodrigo Cuahua, Plaintiff Trial Exh. "B", at ¶ 7.

Plaintiff Rodrigo testified that his weekly base pay was $250 while defendant Jin Jiang stated in his Trial Affidavit that plaintiff Rodrigo was paid $300 per week. Id. at ¶ 14; Jiang Aff., Defendant Trial Exh. "F", at ¶ 29.

---

[4] The defendants have not produced documentation reflecting that written notice was provided to plaintiffs Eliseo, Rodrigo, Raul and Orlando that tips would be used as a credit toward wages. Should this Court determine that defendants are not entitled to take a tip credit for these plaintiffs, it is nonetheless submitted, as set forth more fully below (pages 14 – 15), that the tips earned by all plaintiffs are relevant in determining the questions of whether (1) any violations found by this Court are willful and (2) defendants possessed a good faith belief that their conduct did not violate the law. The amount of tips earned by each plaintiff is therefore discussed herein.

[5] Defendants wish to stress that the hourly breakdowns provided herein are offered <u>only</u> to address the issue of "good faith" and willfulness and to illustrate how the total amount received may appear to be fair to an uneducated person not familiar with existing laws. They are not offered to suggest compliance with existing wages, as it is acknowledged that there are certain requirements and limits pertaining to tip credits and wages that have admittedly not been complied with.

Plaintiff Rodrigo testified that he kept all of his tips, which averaged $2 to $5 per delivery. Deposition Excerpts of Rodrigo Cuahua (hereinafter "Rodrigo Depo."), Defendant Trial Exh. "D", at p. 26-27. He further testified to 20 to 25 deliveries per day. Id. at 25. Assuming $3.50 in tips per delivery and 20 deliveries per day, plaintiff Rodrigo would have taken home $70 in tips per day, resulting in weekly tips of $420. Accordingly, by his own testimony, plaintiff Rodrigo received, on average, a total of about $670 per week for his work at Tanaka.

Breaking it down, this would equal $11.75 per hour (for 57 hours per week) and $9.64 per hour (for 69.5 hours per week).

**Raul Cuahua**

Plaintiff Raul Cuahua (hereinafter "Raul") testified that the period of his employment was February of 2011 through October of 2013. Trial Declaration of Raul Cuahua, Plaintiff Trial Exh. "E", at ¶ 7.

Plaintiff Rodrigo testified that he was paid $250 per week while defendant Jin Jiang stated in his Trial Affidavit that he does not recall anyone by that name working for Tanaka. Id. at ¶ 15; Jiang Aff., Defendant Trial Exh. "F", at ¶ 21.

However, should this Court find that Raul Cuahua worked for Tanaka, some additional facts are worthy of mention. Defendant Jiang testified that all of his delivery workers were paid $300 per week, received approximately $90 - $100 per day in tips and received two meals per day free of charge. Jiang Aff., Defendant Trial Exh. "F", at ¶¶ 9, 16 and 29. No testimony was provided by plaintiff Raul concerning the amount of tips he received.

Even if this Court finds that plaintiff Raul worked for Tanaka and earned weekly pay (separate from tips) of $250 per week, he would have still received anywhere from $790 (if tips

amounted to $90 per day and totaled $540 per week) to $850 (if tips amounted to $100 per day and totaled $600 per week) per week for his work at Tanaka.

Using a figure of $790 per week and assuming 69 hours per week, the hourly pay would translate to $11.44 per hour.

**Orlando Flores**

Plaintiff Orlando Flores (hereinafter "Orlando") testified that the period of his employment was April 2012 through May of 2014. Trial Declaration of Orlando Flores, Plaintiff Trial Exh. "C", at ¶ 7. Defendant Jiang, however, testified that plaintiff Orlando's employment extended from July 6, 2013 to May 23, 2014. Jiang Aff., Defendant Trial Exh. "F", at ¶ 22.

As for his weekly pay, plaintiff Orlando claims that he was paid $250 per week while defendant Jin Jiang stated in his Trial Affidavit that plaintiff Rodrigo was paid $300 per week. Flores, Declaration, Plaintiff Trial Exh. "C", at ¶ 14; Jiang Aff., Defendant Trial Exh. "F", at ¶ 29.

Plaintiff Orlando testified that he kept all of his tips, which averaged $3 to $5 per delivery. He further testified to approximately 25 deliveries per day. Assuming $4 in tips per delivery and 25 deliveries per day, plaintiff Rodrigo would have earned $100 in tips per day, resulting in weekly tips of $600, which is entirely consistent with the testimony of defendant Jiang on this issue. Jiang Aff., Defendant Trial Exh. "F", at ¶ 9.

As such, by his own testimony, plaintiff Orlando earned, on average, about $850 per week for his work at Tanaka, resulting in an hourly wage of $14.91 (for 57 hours per week) or $12.23 (for 69.5 hours per week).

**Vidal Rios**

Plaintiff Vidal testified that the period of his employment was January of 2014 through April of 2015. Trial Declaration of Vidal Rios (hereinafter "Vidal Decl."), Plaintiff Trial Exh. "D", at ¶ 7. Defendant Jiang, however, testified that plaintiff Vidal's employment extended from June 11, 2014 through April of 2015. Jiang Aff., Defendant Trial Exh. "F", at ¶ 22.

As for his weekly pay, plaintiff Rios testified that he was paid $300 per week , which is consistent with the testimony of defendant Jin Jiang. Vidal Decl., Plaintiff Trial Exh. "D", at ¶ 15; Jiang Aff., Defendant Trial Exh. "F", at ¶ 29.

It should be noted that the testimony of Vidal Rios is riddled with self-contradiction. He testified in his declaration that he was "never provided with any document" reflecting (1) his hourly rate of pay, (2) the deductions or credits taken against his wages or (3) anything about his pay or wages. Vidal Decl., Plaintiff Trial Exh. "D", at ¶ 20. This was demonstrated to be an entire falsehood during cross-examination.

The Notice and Acknowledgment of Pay Rate and Payday for plaintiff Vidal (hereinafter the "Notice of Pay"), admitted into evidence as Defendant's Trial Exh. "A", specifically sets forth plaintiff Vidal's hourly rate of pay, deductions and credits taken against his wages for tips and meals and details pertaining to the frequency of his pay and his overtime rate. Moreover, Employee Salary Receipt for plaintiff Vidal (Defendant's Trial Exh. "B") contains an acknowledgment of his salary and the tips received. Plaintiff Vidal's signature is on both of these documents, which are in Spanish, his native language. Vidal Decl., Plaintiff Trial Exh. "D", at ¶ 28. Plaintiff Vidal acknowledged on cross-examination that he received and signed both of these documents while working at Tanaka.

Plaintiff Vidal admitted on cross-examination that he recalled signing both the Notice of Pay and the Employee Salary Receipt and had access to these documents when he signed his declaration, essentially acknowledging that he knowingly made a false statement in his declaration.

Plaintiffs' counsel will likely urge that this was an oversight or mistake. However, even assuming, *arguendo*, that plaintiff Vidal did not *knowingly* make a false statement, this inconsistency demonstrates – at the very least – that plaintiff Vidal's recollection about his employment is simply not reliable.

Plaintiff Vidal's inconsistent testimony about when he started working at Tanaka is only further evidence of this. Initially, in his declaration, he stated that he started working at Tanaka in January of 2014. Vidal Decl., Plaintiff Trial Exh. "D", at ¶ 7. When confronted with the Notice of Pay, he testified that he started employment in July of 2014. Finally, at the conclusion of my cross-examination, he admitted that he really did not recall when he started at Tanaka.

In terms of tips, plaintiff Rios testified at trial and deposition that he took home $2 to $3 in tips per delivery, made approximately 12 to 15 deliveries per day and further took home an additional $20 in tips for large deliveries. Deposition Excerpts of Vidal Rios (hereinafter "Vidal Depo."), Defendant Trial Exh. "E", at p. 29 and 42. Assuming $2.50 in tips per delivery and 12 deliveries per day, plaintiff Vidal would have earned $30 in tips per day and, when added to the additional $20 in weekly tips for large deliveries, received weekly tips that averaged $200 per week.

According to his own testimony, plaintiff Rios earned a total of $500 per week for his work at Tanaka. It is submitted that this testimony is not credible. The Notice of Pay and Employee Salary Receipt, both of which were signed by plaintiff Vidal, completely contradict

plaintiff Vidal's trial testimony that he only received $200 per week in tips and fully supports defendant Jiang's testimony that he took home $90 in tips per day. Jiang Aff., Defendant Trial Exh. "F", at ¶ 9.

The evidence pertaining to plaintiff Vidal demonstrates that he received $840 per week for his work with Tanaka, consisting of $300 in weekly pay and an additional $540 in tips.

From an hourly breakdown, the end result is an hourly wage of $14.73 (for 57 hours per week) or $11.20 (for 75 hours per week).

## LIQUIDATED DAMAGES

An award of liquidated damages is not available under the FLSA if the employer demonstrates that it acted in good faith. 29 U.S.C. §§216(b) and 260; Tae Kim v. Kum Gang, 2015 U.S. Dist. LEXIS 39095, *90 (S.D.N.Y. 2015).

Likewise, pursuant to section 198(1-a) of the New York Labor Law, liquidated damages are not available if the employer proves a good faith basis to believe that the underpayment of wages was in compliance with law. Inclan v. New York Hospitality Grp., Inc., 2015 U.S. Dist. LEXIS 39342, * 29 (S.D.N.Y. 2015).

Defendants, at all times, operated under a good faith basis to believe that his conduct did not violate the law and had reasonable grounds for believing that his acts or omissions did not violate the FLSA and/or other applicable laws. Jiang Aff., Defendant Trial Exh. "F", at ¶¶ 19-20. There is no evidence to the contrary and no evidence to refute the testimony of defendant Jiang on this point.

In this regard, defendant Jin Jiang testified that he worked in the restaurant business for nine years before he owned Tanaka and that he was never taught or informed prior to the institution of this action that

(1) an employer is required to provide a written statement to the employee advising that the tips were being applied as a credit toward the minimum wage obligations of the employer

(2) there are limits on the amount of tips an employer can take as a credit toward the required minimum wage

(3) an employer is required to provide written paystubs at the time of delivering payment to an employee

(4) there are limits under the law concerning how much credit an employer can take for providing meals to employees

(5) employers are mandated by law to maintain employment records which set forth the specific hours, rate of pay and payments made to employees

Jiang Aff., Defendant Trial Exh. "F", at ¶¶ 11 - 20.

Defendant Jin Jiang testified that he had no knowledge, prior to June of 2014, when this action was instituted, that any of his actions related to the plaintiffs who were employed by Tanaka violated existing law. Jiang Aff., Defendant Trial Exh. "F", at ¶¶ 19-20. There is no evidence to refute this.

None of the conduct engaged in by defendants, to the extent found to be in violation of existing wage laws and related laws, was willful.

Defendant Jiang explained in his testimony that he is not educated and is not familiar with the laws, particularly those of this country. Id. at ¶ 18. He was raised in China until the age of seventeen. Id. Prior to starting Tanaka in 2005, he spent nine years in the restaurant business, during which time he learned from what is customary in the industry which, unfortunately, included failing to properly document employee wage information. Id. Defendant Jiang further explained in his testimony that, in China, it is customary to pursue work relationships with far less documentation than that expected of an employer in the United States. Id.

Defendants wish to reiterate that this information is being offered on the question of willfulness and good faith with the understanding that it is not a total defense to liability in this case.

Given the amount of monies received by plaintiffs – when considering their base pay and tips – it was not unreasonable for defendants to believe that their conduct did not violate existing wage laws.

Even if this Court determines that defendants are not entitled to take a tip credit for plaintiffs Eliseo, Rodrigo, Raul and Orlando, the amount of tips earned by all plaintiffs is nonetheless relevant on the issue of whether (1) any violations found by this Court are willful and (2) defendants possessed a good faith belief that their conduct did not violate the law.

If, for example, plaintiffs earned what they did hourly but never received any tips at all – which is not the case - defendants would be hard-pressed to claim a good faith belief that $300 per week is adequate compensation for 57-60 hours of work. Here, it is respectfully submitted that defendants could have reasonably and in good faith believed that the amounts received by plaintiffs – that is, the wages, tips and meals – were fair compensation for plaintiffs, even though that belief may not provide a total defense on liability and even though the tips credits may not be properly utilized as a credit for plaintiffs Eliseo, Rodrigo, Raul and Orlando.

Here, defendant Jiang testified that each plaintiff earned between $90 and $100 per day in tips. Jiang Aff., Defendant Trial Exh. "F", at ¶ 9. Since each plaintiff worked six days per week, this would place the tips received weekly at $540 to $600. With hourly pay, the total amount taken home by plaintiffs amounted to somewhere between $840 and $900. For 57 hours of work, for example, the hourly pay would be $14.73. It is not inherently unreasonable for a

defendant to believe that $840 to $900 per week is adequate compensation for 57 hours of work, even though such belief was incorrect.

It should also be noted in this respect that, while the formalities of the applicable laws were admittedly not met here, it is undisputed that each of these plaintiffs were aware, before starting work at Tanaka, that they would be receiving and keeping tips and that, as a result of this, the amount of their weekly pay was less. Jiang Aff., Defendant Trial Exh. "F", at ¶¶ 12-13. The plaintiffs who testified at the trial acknowledged this on cross-examination and it is clear that none of these plaintiffs were deceived in this regard.

When considering the total amounts actually received by plaintiffs – even if their testimony concerning what they took home is accepted – as well as the meal credits that defendants are entitled to, it was not inherently unreasonable for defendants to believe that they were in compliance with the law.

Defendants always believed that plaintiffs were treated fairly. Jiang Aff., Defendant Trial Exh. "F", at ¶ 20. Defendants never had any intention of violating the law, although it is clear that actions they engaged in were not in compliance with law. Id. at ¶¶ 19-20.

On the question of damages, it is further submitted that plaintiffs should not be permitted to recover liquidated damages under both Federal and State Law.

A plaintiff is not permitted to recover liquidated damages under both the FLSA and the NYLL, since both forms of damages share a similar purpose, and may only recover under one or the other. McGlone v. Contract Callers, 2015 U.S. Dist. LEXIS 94381, *6 (S.D.N.Y. 2015); Inclan v. New York Hospitality Grp., Inc., 2015 U.S. Dist. LEXIS 39342, * 29 (S.D.N.Y. 2015); Zhen Ming Chen v. New Fresco Tortillas Taco LLC, 2015 U.S. Dist. LEXIS 125949, * 19 (S.D.N.Y. 2015).

## STATUTE OF LIMITATIONS

Plaintiffs may only recover for claims dating back to the applicable period of limitations. Yu Y. Ho v. Sim Enters, 2014 U.S. Dist. LEXIS 66408, *35-36 (S.D.N.Y. 2014). The statute of limitations for FLSA actions is two years, or three in cases of "willful" violations. 29 U.S.C. §255.

Mere negligence is not sufficient to constitute "willful" conduct, if the conduct was not reckless. Clarke v. JP Morgan Chase Bank, 2010 U.S. Dist. LEXIS 33264, *10 (S.D.N.Y. 2010). For reasons set forth above (see section entitled "Liquidated Damages"), defendants conduct was not willful. As such, the two year statute of limitations applies with regard to the federal violations.

However, even using the three-year statute of limitations, plaintiff Rodrigo's claims under Federal Law are nonetheless barred. Plaintiff Rodrigo testified that he was employed at Tanaka between August of 2010 through April 15, 2011. Trial Declaration of Rodrigo Cuahua, Plaintiff Trial Exh. "B", at ¶ 7. As such, his last date of employment was still more than three years prior to June 10, 2014, the date this action was commenced.

## SUMMARY OF DEFENDANTS' POSITION

It is therefore the defendants' position that the following should be utilized in connection with any damages calculation in connection with this matter:

(1) defendants are entitled to tip credits for plaintiff Vidal Rios;

(2) defendants are entitled to meal credits for twelve meals per week for all plaintiffs;

(3) plaintiffs worked no more than 60 hours per week;

(4) plaintiffs' each received a weekly salary of $300.00;

(5) plaintiff Orlando Flores worked for Tanaka from July 6, 2013 to May 23, 2014;

(6) plaintiff Vidal Rios worked for Tanaka from June 11, 2014 through April of 2015;

(7) there is no liability for violation of section 195(1) of the New York State Labor Law with regard to plaintiff Vidal Rios;

(8) no liquidated damages should be awarded under Federal or State Law;

(9) should this Court decide to impose liquidated damages, it should do so under either Federal or State Law and should not award cumulative Liquidated Damages; and

(10) all federal claims by plaintiff Rodrigo Cuahua should be dismissed.

Dated: New York, New York
December 2, 2015

Yours, etc.,

**LAW OFFICES OF**
**YANG & ASSOCIATES**
Attorneys for Defendants
Tanaka Japanese Sushi Inc.,
Samurai Sashimi Inc. and Jin Jiang

By: ______________________
Daniel L. Millman, Esq. (DM 5227)
Of Counsel
9 East Broadway, Suite 302
New York, New York 10038
(212) 608-3888

To: Michael Faillace & Associates, P.C.
Attorneys for Plaintiffs
60 East 42nd Street, Suite 2540
New York, New York 10165